

**RECEIVED**

MAY 2 2 2008    MAY 2 2 2008

### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Tony M. Townsend )
)
)
_____ )
(Name of the plaintiff or plaintiffs) )
)
v. )
)
Pacella Trucking )
Express / Piggyback )
Inc. )
_____ )
(Name of the defendant or defendants) )

CIVIL ACTION

## 08CV2974
## JUDGE LEINENWEBER
## MAG. JUDGE BROWN

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is Tony M. Townsend _____ of the
county of COOK _____ in the state of Illinois.

3. The defendant is Pacella Trucking/Piggyback Inc., whose
street address is 2558 S. Damen Ave
(city) Chicago (county) Cook (state) IL. (ZIP) 60608
(Defendant's telephone number) (773) - 927-1300

4. The plaintiff sought employment or was employed by the defendant at (street address)
2558 S. Damen Ave. (city) Chicago
(county) COOK (state) IL. (ZIP code) 60608

5. The plaintiff [check one box]

(a) [✓]    was denied employment by the defendant.

(b) [ ]    was hired and is still employed by the defendant.

(c) [ ]    was employed but is no longer employed by the defendant.

6. The defendant discriminated against the plaintiff on or about, or beginning on or about, (month) _02_ , (day) _22_ , (year) _07_ .

7.1 _(Choose paragraph 7.1 or 7.2, do not complete both.)_

(a) The defendant is not a federal governmental agency, and the plaintiff [check one box] ☐ has not ☑ has filed a charge or charges against the defendant asserting the acts of discrimination indicated in this complaint with any of the following government agencies:

(i)  ☑ the United States Equal Employment Opportunity Commission, on or about (month) _March_ (day) _21_ (year) _2007_ .

(ii)  ☐ the Illinois Department of Human Rights, on or about (month)_____ (day)_____ (year)_____

(b) If charges _were_ filed with an agency indicated above, a copy of the charge is attached. ☑ YES. ☐ NO, **but plaintiff will file a copy of the charge within 14 days.** It is the policy of both the Equal Employment Opportunity Commission and the Illinois Department of Human Rights to cross-file with the other agency all charges received. The plaintiff has no reason to believe that this policy was not followed in this case.

7.2  The defendant is a federal governmental agency, and

(a) the plaintiff previously filed a Complaint of Employment Discrimination with the defendant asserting the acts of discrimination indicated in this court complaint.

☐  Yes (month)_____ (day)_____ (year) _____

☐  No, did not file Complaint of Employment Discrimination

2. The plaintiff received a Final Agency Decision on (month)_____ (day) _____ (year) _____ .

c. Attached is a copy of the

a. Complaint of Employment Discrimination,

☐ YES  ☐ NO, but a copy will be filed within 14 days.

(ii) Final Agency Decision

☐ YES  ☐ NO, but a copy will be filed within 14 days.

8.    *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

(a) ☐ the United States Equal Employment Opportunity Commission has not issued a *Notice of Right to Sue.*

(b) ☑ the United States Equal Employment Opportunity Commission has issued a *Notice of Right to Sue*, which was received by the plaintiff on (month) *O4* (day) *22* (year) *2008* a copy of which *Notice* is attached to this complaint.

9.    The defendant discriminated against the plaintiff because of the plaintiff's [*check only those that apply*]:

(a) ☐ Age (Age Discrimination Employment Act).

(b) ☐ Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(c) ☐ Disability (Americans with Disabilities Act or Rehabilitation Act)

(d) ☐ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e) ☑ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f) ☐ Religion (Title VII of the Civil Rights Act of 1964)

(g) ☐ Sex (Title VII of the Civil Rights Act of 1964)

10.    If the defendant is a state, county, municipal (city, town or village) or other local governmental agency, plaintiff further alleges discrimination on the basis of race, color, or national origin (42 U.S.C. § 1983).

11.    Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the A.D.E.A. by 42 U.S.C.§12117; for the Rehabilitation Act, 29 U.S.C. § 791.

12.    The defendant [*check only those that apply*]

(a) ☑ failed to hire the plaintiff.

(b) ☐ terminated the plaintiff's employment.

(c) ☐ failed to promote the plaintiff.

(d) ☐ failed to reasonably accommodate the plaintiff's religion.

(e) ☐ failed to reasonably accommodate the plaintiff's disabilities.

(f) ☐ failed to stop harassment;

(g) ☐ retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above;

(h) ☐ other (specify): _____

_____

_____

_____

_____

13. The facts supporting the plaintiff's claim of discrimination are as follows:

Pacella Trucking Express were Asked to Submit a List of names and race of all employees and owner operators the company Submitted names only, they never submitted the race. they also did not provide information in a timely fashion. to the EEOC. investigator Daniel Lim.

14. **[AGE DISCRIMINATION ONLY]** Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15. The plaintiff demands that the case be tried by a jury. ☐ YES    ☑ NO

16. THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

(a) ☐ Direct the defendant to hire the plaintiff.

(b) ☐ Direct the defendant to re-employ the plaintiff.

(c) ☐ Direct the defendant to promote the plaintiff.

(d) ☐ Direct the defendant to reasonably accommodate the plaintiff's religion.

(e) ☐ Direct the defendant to reasonably accommodate the plaintiff's disabilities.

(f) ☐    Direct the defendant to (specify): _____

_____

_____

_____

_____

_____

(g) ☑    If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) ☐    Grant such other relief as the Court may find appropriate.

(Plaintiff's signature)

_____

(Plaintiff's name)

Tony M. Townsend

(Plaintiff's street address)

485 Buffalo Ave. Apt. 2f

(City) Calumet City (State) IL. (ZIP) 60409

(Plaintiff's telephone number) (708) - 3160 - 6895

Date: 05/21/08

EEOC Form 161 (2/08)

**U.S. E̲ ̲AL EMPLOYMENT OPPORTUNITY COMM ̲ ̲ON**

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To:  **Tony Townsend**<br>**485 Buffalo Avenue**<br>**Apt. 2f**<br>**Calumet City, IL 60409** | From:  **Chicago District Office**<br>**500 West Madison St**<br>**Suite 2800**<br>**Chicago, IL 60661** |

**Certified Mail # 7001 1940 0003 8824 6230**

☐  *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2007-03688 | **Daniel Lim,**<br>**Investigator** | **(312) 886-9839** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐  Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*John P. Rowe*                          4/22/2008

**John P. Rowe,**                          *(Date Mailed)*
**District Director**

Enclosures(s)

cc:

**PACELLA TRUCKING INC.**

To your Honor

I applied for a Owner Operator
position the hiring qualifications
in exhibit A, is for company drivers.
I did not apply for the company
driver position, in the file I
received from the EEOC, I seen
that they have a copy of
the Independent Contractor
Service Agreement and they do not
have these qualifications listed.

Pacella received a Criminal
record on me and the only thing
that I had on it was in 1995
a misdaemeanor for disorderly
conduct where I served 1 year probation.
there were no other convictions.

On the hiring qualifications they
stated that you can have no
more than 2 Violations in 3 yrs.
I only had 1 and 1 no fault accident.
in a car.

In Daniel Lim of the EEOC
notes he requested from pacella
a list of names and race of
employees. pacella provided
names but never provided
race of employees.

UNITED STATES
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

IN THE MATTER OF                    )
                                    )
            Tony Townsend,          )
                                    )
                 COMPLAINANT,       )
                                    )   CHARGE NO. 440-2007-03688
AND                                 )
                                    )
            Pacella Trucking, Inc.  )
                                    )
                 RESPONDENT.        )

## DECLARATION IN SUPPORT OF POSITION STATEMENT

Michael Spangler declares and states as follows:

1. I am the Safety Director of Pacella Trucking Express, Inc., incorrectly named as
Pacella Trucking, Inc. ("Pacella"), respondent herein, and submit this Declaration in support of
the position statement of Pacella. I have knowledge of the facts contained herein and if called as
a witness in this matter could competently testify as follows:

2. Pacella is an Illinois corporation with its principal place of business at 2558 S. Damen
Ave., Chicago, Illinois. Beginning in 1981, Pacella has grown to become the largest intermodal
crosstown trucking company in North America. Pacella provides service to all railroad and
steamship lines, as well as pick-ups and drop-offs in Illinois, Wisconsin, Iowa, Indiana, Ohio,
and Michigan. Pacella is dedicated to safety in the trucking industry and develops and maintains
procedures for accident prevention, which includes hiring drivers with good driving records.
Pacella also hauls hazardous materials and is required by federal regulations to make driver
background checks.

3. Pacella has about 270 drivers of which only 18 are company drivers and employees of Pacella. The majority of the rest are "owner operator" drivers ("O/O") who are hired as independent contractors on a job-by-job basis. The O/O drivers have their own trucks and are compensated on a percent (%) of the the gross of the haul or move. They are not paid wages or salary and receive 1099 statements from Pacella. The O/O drivers are offered job dispatches by Pacella which they can accept or decline. If a dispatch is accepted, the O/O driver completes the pick-up/delivery. Pacella's hiring qualifications require the applicant to have training in the transportation industry and to have a good driving record. See Exhibit A. Pacella hires qualified O/O drivers without regard to race, color, religion, sex, national origin, age, marital status, veteran status, non-job related disability, and any other protected group status. See Exhibit B.

4. Pacella has a sign in front of its office stating "Owner Operators Wanted." Apparently in response to that sign, claimant Tony Townsend ("Townsend") asked me to send him an application for O/O driver. I did so and sometime thereafter received his application by fax on or about February 22, 2007, when it is dated. Exhibit B. In the application, as requested, Townsend disclosed his driving performance and employment history. Also, Townsent consented to Pacella conducting a background investigation of his work history, motor vehicle record, work performance as a commercial motor vehicle operator, and any past violation of a State or Federal law. Exhibit B.

5. Pacella obtained a US Motor Vehicle Report ("MVR") and Criminal Record Report ("CRR") for Townsend. See Exhibits C and D. The MVR report showed a speeding violation in July 2004 which Townsend did not disclose in his application. Compare Exhibits C and B. The CRR showed a conviction for disorderly conduct. This is significant because drivers for Pacella, in dealing with people on the dispatch, must maintain good customer relations and avoid

altercations and confrontations.   In addition there was an unexplained gap from July 2005 to February 2007 in his Employment History in the application. See Exhibit B.  Because of his background record and incomplete application, I did not hire Townsend.  He did not meet Pacella's hiring qualifications.

6.  My decision not to hire Townsend was not based upon his race. Pacella has hired African-American O/O drivers in the past and currently has African-American O/O drivers.

7.  The Charge of Discrimination alleges that Townsend applied and was not hired for an Owner/Operator position on October 27, 2006.  Pacella has no record that Townsend applied and was not hired on that date.  Pacella only has the application from Townsend dated February 22, 2007, attached as Exhibit B.

8.  I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 13 , 2007.

Michael Spangler

## HIRING QUALIFICATIONS
## PACELLA PIGGYBACK/TRUCKING EXPRESS, INC.
## 1/1/2005

### DRIVER QUALIFICATIONS:

- Current Class A-CDL
- Qualified applicants with HAZMZT endorsement preferred but not mandatory.
- Must be able to read, write, speak and comprehend English at a level that meets job and Federal Motor Carrier requirements.
- No history of criminal record.
- Must have physical capacity to qualify for and maintain a DOT medical card.
- Minimum - 21 years of age. Twenty three years of age is preferred. Applicants between the ages of 21 and 23 must display exceptional defensive driving skills; and manageability of the unit during road test.
- Knowledge of Pre-trip and Post-trip inspections on combination vehicles.
- Experience – Training in the transportation industry, will look at driving school candidates that display exceptional skills during road and vehicle inspection test.

### MVR QUALIFICATIONS:

- No more than one speeding violation 15-mph or more, over the posted speed limit within the past three years.
- No more than 2 speeding violations 11-14 mph over the posted speed limit within the past 3 years.
- No reckless driving or unsafe driving convictions within the past 3 years, including but not limited to:

    1. Following the vehicle ahead to closely
    2. Driving too fast for conditions
    3. Making improper/erratic traffic lane changes
    4. Any rail road crossing related violations
    5. Any violation involving the unauthorized operation of a CMV
    6. Violating a driver or vehicle out-of-service order.

No more than two moving violations within a period of three years including but not limited to:



7. Failure to yield to a stop sign
8. Failure to yield the right of way
9. Failure to yield to an Emergency vehicle or Police officer attending to an emergency situation.

- No history of DUI or Drug possession within the last 10 years.
- No history of violations regarding State or Federal Drug and Alcohol regulations.
- No license revocation or suspension within the last three years except for financial responsibility or emission suspensions; which may be considered upon review.

## DRIVING PERFORMANCE QUALIFICATIONS:

- No more than 1 D.O.T. recordable/preventable accident within the last two years.

Note* Applicant with rear-end collision that resulted in a citation for following too close that appears on MVR report will not be accepted.

- No more than two preventable (non-recordable) accidents within the last three years.
- No more than one preventable (non-recordable) accident within the last year.

**NOTE\* Please make sure that before a candidate begins training, they visit the Safety Department for pre-qualification. Pre-qualification must take place prior to any formal training to make sure their personal background, and driving performance history meets the specified requirements.**

Motor Vehicle Accident Report codes:

99 – Involved with no citation
04 – Involved with citation
02 – Involved with citation for illegal use of alcohol

The hiring standards published in this document are simple guidelines for hiring recommendations. Pacella Piggyback/Trucking Express, Inc. reserves the right to hire an individual based on the companies total discretion regarding personal background, and safety history contained in the reports searched upon the applicants' authorization, regardless of the type of violation, and time line to which a violation was committed.

## INDEPENDENT CONTRACTOR SERVICE AGREEMENT

THIS AGREEMENT, made this _____ day of _____, 20____, between PACELLA PIGGYBACK, INC. an Illinois Corporation, whose corporate headquarters are located at 2558 South Damen Avenue, Chicago, Illinois 60608, hereinafter referred to as CARRIER, and

a _____(indicate whether individual, partnership or corporation including state of incorporation) whose principal business address is

_____,_____,_____ _____
Address                                            City, State                     Zip code

Phone Number:           _____
Social Security #:       _____ and/or
Federal Employer's Tax I.D. No, is_____ hereinafter
referred to as CONTRACTOR.

Carrier wishes Contractor to provide drivers and tractors (herein, the "Equipment") to Carrier to be used by Carrier in conjunction with its business. Contractor wishes to provide such services and Equipment to be used by Carrier in conjunction with the transportation of goods in interstate or foreign commerce when the transportation is exempt from federal and state economic regulation.

The parties therefore agree as follows:

1. **SERVICES:**

(a)     This Agreement shall govern Contractor's engagement for the transportation of goods in interstate or foreign commerce when that transportation is exempt from federal and state economic regulation, and shall have no applicability to the transportation of goods in interstate commerce when subject to federal or state economic regulation or in intrastate commerce under any circumstances. Contractor shall provide to Carrier (___) piece(s) of Equipment commencing on _____ and continuing thereafter for each business day (Monday through Sunday). Such Equipment is described in Exhibit A hereto and shall be made available to Carrier at such times as Contractor is free to use its personnel and Equipment in pursuance of any other business purpose, either for itself or for other carriers. Nothing in this Agreement is intended or shall be construed to create an exclusive dealing agreement between Contractor and Carrier, and at all times each is free to deal with others as to matters within the scope of this Agreement. On those occasions during the term of this Agreement when Contractor uses the Equipment for business purposes other than those provided for hereunder, Contractor shall remove or completely obscure any placards bearing Carrier's name.

(b)     Contractor certifies that the equipment is and shall be maintained during the course of this Agreement in good working condition and properly licensed to perform the functions contemplated hereunder. Contractor is a professional motor carrier company and is aware of the rules, regulations and laws which govern equipment and drivers of same engagement in commercial motor carriage. Contractor is particularly aware of its responsibility to perform a continuing program of inspection, repair and maintenance with respect to the

/

Independent Contractor Service Agreement
Page 2

equipment and to establish and maintain files demonstrating the type and dates of all inspections, maintenance and repairs performed upon the Equipment. Contractor understands and agrees that it is jointly responsible with Carrier for making such records available to the United States Department of Transportation pursuant to 49CFR Sec.396. Upon demand, Contractor agrees to provide Carrier with evidence of its compliance with local, state or federal law, rule or regulation, the evidence of which is required by law, rule or regulation to be produced or maintained by Carrier.

(c)     Pursuant to this Agreement, Carrier agrees to make freight or equipment available to Contractor for transportation at such times and in such amounts as Carrier may choose to offer and Contractor may choose to accept. Carrier does not guarantee any specific number or frequency of loads, and Contractor is free to accept or reject any freight or equipment offered.

(d)     The parties hereto agree that customer satisfaction is of crucial importance to them in the performance of their obligations hereunder. Accordingly, each party pledges to the other that it will conduct itself in a manner which seeks to promote such customer satisfaction and will report to the other any disagreements, altercations or disputes involving any customer, its agents or employees.

2.     **PERSONNEL AND EQUIPMENT:**

(a)     This contract is between co-equal motor carriers, both of whom are engaged in "for hire" motor carriage. No contract of employment is intended nor to be implied hereby. The parties intend to establish a relationship whereby Contractor is and remains an independent contractor with regard to the services provided hereunder.

(b)     Except where otherwise required by federal law, rule or regulation, Contractor shall, by its sole choosing, employ personnel to drive and maintain the Equipment. The selection, compensation, working hours, working conditions, retention and discipline of personnel is totally with the Contractor. The supervision and control of such personnel and the mode and manner in which they perform their duties pursuant to this Agreement is solely with Contractor. Contractor agrees to provide properly qualified, disciplined, supervised and supported personnel to Carrier. Contractor shall report to Carrier the identity and qualification of all such personnel prior to their performance of duties hereunder. All such personnel shall be considered active personnel in any month unless Contractors reports such personnel as inactive personnel prior the first day of that month. No personnel can be reported as inactive personnel if such personnel performed any duties hereunder within 30 days of such report. Contractor assumes full responsibility for the payment of wages, benefits and expenses for its employees and for the reporting of same to the appropriate regulatory agencies.

(c)     In signing this Agreement, Contractor certifies that the personnel and Equipment supplied to Carrier meet all industry and regulatory standards and qualifications, including those set forth at 49 CFR 383 through 399, inclusive and 49 CFR Parts 1043, 1057 and 1058. Contractor agrees to provide documentary evidence of its performance of such responsibilities to

Independent Contractor Service Agreement
Page 3

Carrier upon reasonable notice. Carrier shall retain the right to perform its obligations as set forth in the Federal Motor Carrier Safety Regulations of the United States Department of Transportation at 49 CFR 383 through 399, inclusive. Except for said obligations, Carrier shall have no right of control over Contractor's personnel or the Equipment. Contractor is advised that, pursuant to 49 CFR 392.60, under which Carrier operates, passengers are not permitted in the Equipment while under dispatch from Carrier or displaying Carrier's placard.

(d)     Contractor shall, in its sole discretion, determine proper loading, number of drivers per vehicle, legality of weight as loaded, selection of routing, periods or rest, periods of maintenance, maintenance of logs, safety precautions and all such other activities involved in performing its obligations hereunder. Contractor agrees to submit to all testing required by federal, state or local laws, rules or regulations. Contractor realizes that such includes testing for the presence of certain drugs; acknowledges receipt of a copy of the policy concerning such testing adopted by Carrier as required by federal law; and, in entering into this Agreement, agrees, but only to the extent required to facilitate the testing as required by law, to waive any and all rights of privacy which Contract may have in connection therewith. Contractor shall make Carrier aware of any prescription medications being used by Contractor or any of its employees or agents during all times services are provided hereunder. Contractor shall promptly report to Carrier any accident, claims, losses or damage of any kind whatsoever suffered by Contractor, its employees or agents, third parties, cargo or the Equipment or tailing bodies used to perform services hereunder. Contractor shall provide to Carrier such reports as may be required by 49 CFR 394 or Carrier's insurance carriers and shall otherwise cooperate in the handling and resolution of any claims or inquiries arising therefrom.

3.     **DIRECT COSTS**:

(a)     Contractor shall supply all costs of its personnel and Equipment operations, including but not limited to capital investment, costs of administration, wages, taxes, benefits, equipment repair, maintenance, licenses and fuel together with those insurance coverage required by law, rule, regulation of this Agreement. Carrier may, at its sole discretion, agree to advance and loan to Contractor amounts intended to defray such operating expenses, or damages or deductibles the payment of which by the Contractor is required by this Agreement, and in such case Contractor is required by this Agreement, and in such case Contractor shall execute a note or such other security as Carrier may require recognizing Carrier's right to secure repayment of such amounts through settlement deduction or the application of the Security Fund, or the direct enforcement of such obligation in a court of law. Contractor specifically agrees that the obligation for the repayment of any such advances or loans shall survive the termination of this agreement.

(b)     Contractor will file all federal, state and local tax forms associated with it operations hereunder, including Federal Highway Use Tax and employee tax withholding. Contractor will pay, when due, all taxes and contributions reported in such forms and will indemnify Carrier for any costs incurred by Carrier as a result of Contractor's failure to do so.

Independent Contractor Service Agreement
Page 4

Carrier will provide freight or equipment together with shipping documents, placards, delivery
receipts and seals.

4.  **GENERAL INDEMNITY**:

(a)    Duty to Inspect Equipment.  Contractor acknowledges that it is familiar with
conditions imposed on the interchange of equipment between Carrier, on the other hand.
Contractor further acknowledges that it is obligated to meet such conditions when in possession
of interchanged equipment and, specifically, that its personnel must inspect the physical
condition of the interior and exterior of any equipment interchanged on behalf or at the discretion
of Carrier and must note exceptions on the interchange receipt before executing the interchange
receipt on Carrier's behalf.  Carrier appoints contractor as Carrier's agent for the observation of
conditions imposed on the interchange of equipment.

(b)    Duty to Obtain Customer Approvals.  Contractor understands its obligation to
obtain customer signatures upon delivery receipts for equipment delivered to Carrier's
customers.  Contractor shall obtain signed delivery receipts for empty trailers delivered for
loading, noting on the delivery receipt any exceptions which the customer takes to the equipment
type or condition.  Contractor will obtain signatures from the customer noting that the seal is
intact on any loads delivered or shipped.  Contractor will obtain signatures from the customer
noting that certain accessorial services have been performed and specifying the amount of time
provided the customer in performing such functions.  If the customer refuses to sign any such
receipt, Contractor shall note such refusal upon the face thereof.  Contractor will not be entitled
to compensation for such services in the event that it fails to obtain the approvals aforesaid.

(c)    Shipper's Load and Count.  If tendered a sealed container or container loaded by
the shipper, Contractor shall note "shipper's load and count" on any bill of lading before signing
same as carrier's agent.  Contractor shall not mark "shippers Load and Count" on any bill of
lading if Contractor participated in the loading of the container, unless Contractor's participation
was so limited that contractor had no reasonable opportunity to inspect the container's contents.

(d)    Equipment Interchange Charges.  Contractor shall inspect each trailer coming into
its possession prior to accepting same on behalf of carrier and shall take written exception on the
interchanging document of any defect, damage or mechanical problems, before executing any
interchange or accepting return of any unit from a shipper or consignee, Contractor's agency
authority shall not permit it to interchange such equipment until Contractor has advised Carrier's
duty dispatcher of the facts and circumstances surrounding such defective equipment and has
received express authorization to interchange the equipment.  Unless such authorization is
received prior to interchange, any loss sustained by Carrier will be the sole and exclusive
responsibility of Contractor.  A true copy of an interchange document demonstrating damage or
defects to such equipment at time of return by Contractor shall be prima facie evidence of
Contractor's responsibility to Carrier for indemnification of the repair costs as assessed by the
entity controlling the equipment interchanged.

Independent Contractor Service Agreement
Page 5

(e)     Vehicular Fines and Citations. Contractors acknowledges that it is responsible for its drivers' compliance with the requirements of this Section 4 and with all applicable laws, rules and regulations. In the event such driver receives citations in connection with contracted activities on behalf of carrier, fines levied in connection therewith are the sole obligation of Contractor, unless the same are vehicle code violations regarding the transportation of excess weight in vehicles loaded, supervised or sealed by persons other than Contractor, its employees or agents. If fines chargeable to contractor pursuant to this Agreement are issued in Carrier's name and thereafter paid by carrier, the same shall be repaid to Carrier by Contractor.

(f)     Failed Performance. In the event that Contractor fails to complete a trip, abandons a shipment or otherwise subject carrier to liability, directly or indirectly, related to Contractor's failure to perform or to perform as agreed, contractor shall receive no compensation for the services performed on said activity, and Carrier shall have the right to complete performance in any manner or method which it sees fit, using substituted equipment or services.

(g)     Carrier and contractor agree that the costs, thereof, for any breach of sections (a)-(f) shall be paid according to offset against settlements and/or Security Fund. In that regard, Contractor authorizes Carrier to advance the same and to deduct from Contractor's settlements and/or Security Fund any sums advanced through such settlement period. Contractor agrees to pay Carrier, upon demand, for any costs which remain unsatisfied by way of settlement offset or Security Fund.

5.     **INSURANCE AND INDEMNITY:**

(a)     Indemnity. Contractor shall indemnify, save harmless and defend Carrier from and against any and all loss, cost, damage, injury or expense, including attorneys' fees and costs, insurance deductibles, incurred in defending, settling or otherwise handling claims arising out of or related to any acts of contractor involving either intentional or negligent conduct on Contractor's behalf or imposing statutory liability without fault. Such indemnity applies regardless of whether Carrier or Contractor has insurance to cover any such loss.

(b)     Security for Indemnity. Contractor shall procure and maintain current during the life of this Agreement insurance of the type and in the amount as may be, from time to time, required by Carrier. Carrier maintains insurance which is necessary for its operation and as required by law. When Contractor is compensated pursuant to Section 1 of Schedule B, for service performed under this Agreement, contractor may use carrier's insurance for the following: automobile liability, cargo insurance and comprehensive physical damage insurance; provided, however that Contractor shall still indemnify carrier as set forth in subsection (a) above. As of the execution of the Agreement, carrier requires the following insurance coverage:

(1) Bobtail Insurance. Contractor shall carry bobtail insurance for all times when contractor is not performing services under this agreement.

Independent Contractor Service Agreement
Page 6

(2) Collision and Comprehensive. Contractor shall carry such collision and comprehensive insurance as it deems appropriate for the equipment. Carrier carries no insurance on the equipment operated by Contractor.

(3) Occupational Accident, Disability and Life Insurance. All active personnel shall be enrolled in the Contractor's occupational accident, disability and life insurance program administered by the Carrier on behalf of all its Contractors.

(4) Workers' Compensation. Contractor shall be solely responsible for compliance with all applicable workers compensation laws, and the requirement of providing workers compensation insurance for all personnel employed in the performance of this agreement, or known by Contractor to ride within the equipment including Contractor, if contractor acts in any capacity in the performance of this agreement.

Contractor may purchase insurance with deductibles it deems appropriate. Contractor shall be solely responsible for any of its insurance deductibles

(c) Proof of Insurance. Contractor shall provide evidence of all insurance coverage required hereunder by delivering to Carrier, before the equipment is allowed to commence working, certificates of insurance and appropriate additional insurance endorsements made out in forms suitable to carrier.

(d) Non-Waiver. Not withstanding the fact that carrier does not require, or Contractors fails to maintain, certain classes or types of insurance, same is not to be construed as a waiver of Carrier's right to indemnification for acts of Contractor or its employees or equipment which cause loss to Carrier or others.

## 6.    COMPENSATION:

Contractor shall receive settlement for its services provided according to this Agreement on a weekly basis, on the FRIDAY following the week in which the freight or equipment was moved and proper documentation thereof provided to carrier. Cutoff for the receipt of any paperwork for completed work shall be 12:00 midnight on Sunday of the week prior to payment. Compensation shall be computed according as set forth on Schedule B. A condition precedent to payment for such freight or equipment movement is that all paperwork necessary for freight or equipment billing (including delivery receipts properly executed by carrier's customers) be tendered to carrier not later than 12:00 midnight of the Sunday following completion of the contracted movement. Disputes over compensation shall be submitted by either party in writing within sixty (60) days of the performance of the service or shall be deemed waived by that party.

Independent Contractor Service Agreement
Page 7

7.    **TERMINATION**:

(a)    This Agreement shall be continuous and may be terminated by (i) mutual consent or by (ii) either party upon thirty (30) days' prior notice in writing; or (iii) material breach of this Agreement by either party.

(b)    Return of Carrier Provided Property. Upon termination of this Agreement, and prior to final settlement, Contractor shall return to carrier all placards, mobile radios, delivery receipts, seals, trip permits and other materials, equipment and supplies belonging to or provided by Carrier. In the event Contractor is unwilling or unable to return such materials upon demand, carrier may deduct the costs of same as set forth in the receipt given by Contractor from any funds belonging to Contractor and within the Carrier's possession (e.g. settlement or Security Fund). Contractor shall indemnify and hold Carrier harmless for claims, fines or losses occasioned by Contractor's failure to return or remove such placards. Carrier is given a lien upon any undistributed settlement proceeds from which to satisfy these obligations.

8.    **SECURITY FUND**:

In order to secure the performance of Contractor's obligations hereunder, the parties agree to the creation of a Security Fund which will be funded by Contractor's contributions. This fund, subject to the terms of this Agreement, shall belong to Contractor. Where the number of active personnel is less than three (3), the fund shall maintain a balance of $500 which shall be originally funded and thereafter replenished through settlement deduction at the rate of $100.00 per week. Where the number of active personnel equals or exceeds (4), the fund shall maintain a balance of $1000.00 and shall be originally funded or replenished through settlement deductions at the rate of $200.00 per week. Contractor agrees to and authorizes the following deductions from the fund or from any other compensation due under the terms of this Agreement: (i) those provided for in Sections 4,5 and 7 of this Agreement; and (ii) any unpaid insurance deductibles relating to casualty losses involving Contractor which have either been arbitrated or the period in which to request arbitration has expired.

9.    **ARBITRATION**:

In the event that contractor disputes any deductions made by Carrier from Contractor's settlements, and such dispute cannot be resolved by mutual agreement, the dispute shall be submitted to final and binding arbitration. Arbitration may be requested by Contractor by giving written notice to Carrier on or before the tenth day following deduction of the disputed amount. The dispute shall be heard by two (2) persons; one (1) similarly situated contractor selected by Contractor and one (1) person selected by Carrier. If these two (2) arbitrators cannot agree, they shall choose a third impartial arbitrator whose decision shall be final and binding on both parties. Any arbitration under this Section 9 shall be conducted in the city of Chicago and, if an impartial arbitrator is involved, in accordance with the commercial arbitration rules of the American Arbitration Association. Judgment upon the award rendered by the arbitrators may be entered in

Independent Contractor Service Agreement
Page 8

any court having jurisdiction. The parties shall share equally the fee and expenses of the third
arbitrator, if any, and the successful party shall be entitled to recover from the other party the
costs incurred, including reasonable attorney's fees.

10.    **NOTICE**:

Notices and all other communications contemplated by this Agreement shall be in writing
and shall be deemed to have been duly given when personally delivered or when mailed by U.S.
certified mail, return receipt requested and postage prepaid, to the other party at its address first
above written. Either party may by notice to the other specify a different address for notice
purposes.

11.    **MISCELLANEOUS PROVISIONS**:

(a)     Waiver. No provision of this Agreement shall be modified, waived or discharged
unless the modification, waiver or discharge is agreed to in writing and signed by the parties. No
waiver by either party of any breach of, or of compliance with, any condition or provision of this
Agreement by the other party shall be considered a waiver of any other condition or provisions or
of the same condition or provision at another time.

(b)     Whole Agreement. This Agreement, including its incorporated exhibits and
agreements, constitutes Carrier's and Contractor's entire agreement with respect to its subject
matter, and it supersedes all other agreements, whether written or oral, between them. Carrier
and Contractor acknowledge that there is no representation, inducement, promise or agreement,
whether oral or written, with respect to this Agreement's subject matter that is not incorporated
into this Agreement.

(c)     Choice of Law. The validity, interpretation, construction and performance of this
Agreement shall be governed by the laws of the State of Illinois.

(d)     Severability. The invalidity or unenforceability of any provision or provisions of
this Agreement shall not affect the validity or enforceability of any other provision hereof, which
shall remain in full force and effect.

(e)     Remedy. The election by Contractor or Carrier of a remedy provided in this
Agreement shall not constitute a waiver of any other remedy that it may have at law or in equity
except where explicitly provided to the contrary in this Agreement.

Executed at:_____ on _____

For Carrier                                             For Contractor


_____                        _____
By:                                                    By:

From: unknown    Page: 10/11    Date: 3/25/2008 4:54:19 PM

Independent Contractor Service Agreement
Page 9

### Independent Contractor Service Agreement
### Schedule A
### Equipment Furnished By Contractor

CONTRACTOR warrants that the following described equipment conforms to and meets the requirements of all applicable Federal and State laws and the rules and regulations of the Interstate Commerce Commission (ICC), the United States Department of Transportation (USDOT), Federal Motor Carrier Safety Administration, and all other applicable regulatory and State authorities:

### TRACTORS

| Year Make and Model | VIN# | Company Number | Date Placed in Service |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

This Schedule is executed as of the _____ day of _____ 20_____, and supersedes any and all previous schedules of equipment furnished by CONTRACTOR under this agreement.

CARRIER:    **Pacella Piggyback, Inc.**

Authorized:

Print Name _____

Signature _____

Independent Contractor Service Agreement
Page 10

INDEPENDENT CONTRACTOR SERVICE AGREEMENT
SCHEDULE B
SCHEDULE OF PAYMENT FOR SERVICES RENDERED
(Check one of the following)

☑    Section I:

If this Section is executed, Contractor shall be paid the following:

_____% of Gross Revenue

Carrier                                         Contractor


_____          _____
By:                                             By:


❑    Section II:

If the following is executed by the parties, Contractor shall provide full insurance including the
following insurance in addition to that required in Section 5 of this Agreement. Such
Contractor's insurance, in each instance as required hereunder, shall be primary and
noncontributing to any insurance maintained by Carrier and shall include:

(1) Automobile Liability Insurance. Contractor shall carry automobile liability insurance
covering bodily injury and property damage with a combined single limit of not less
than $1,000,000 covering operation of the Equipment at all times. Such coverage
shall include trailer interchange liability.
(2) Cargo Insurance. Contractor shall carry cargo insurance in an amount not less than
$50,000.
(3) Contractor shall carry comprehensive physical damage insurance on one unidentified
trailing body (trailer, chassis, container, etc.) in the amount of at least $25,000.

If this Section 2 is executed, the Contractor shall be paid the following:

_____% of Gross Revenue

Carrier                                         Contractor


_____          _____
By:                                             By:

Called Juris Kins

29 Feb 08
Dhn

I apologized for delay in processing.

Requested

① whether R & O/O enter into a contract
  send copy of contract.

② Breakdown of O/O & Fe/O by race.

Pacella Piggyback, Inc.
Owner-Operators (Independent Contractors)
All That Hauled Freight During 2007

| Owner-Operator Name | ADP Code | |
|---|---|---|
| A&J Trucking Express, Inc. | 3RU | 1 |
| A&K Express | 3RT | 2 |
| A.P.S. Trucking, Inc. | 3RU | 3 |
| AB Gruba Corp. | 3RU | 4 |
| ABG Transport, Inc. | 3RT | 5 |
| Alarcon, Jose | 3RU | 6 |
| All City Trucking Co. | 3RT | 7 |
| Almanza, Juan | 3RT | 8 |
| Almanza, Miguel | 3RT | 9 |
| Alvarez, Guillermo | 3RT | 10 |
| Alvarez, Veronica | 3RT | 11 |
| Amedeka, David | 3RT | 12 |
| Angelica's Trucking | 3RT | 13 |
| Arcpol, Inc. | 3RU | 14 |
| Ariel's Trucking, Inc. | 3RT | 15 |
| Arreguin, Sergio | 3RU | 16 |
| Avina, Juan | 3RT | 17 |
| Ayala's Trucking and Transportation, Inc. | 3RT | 18 |
| B&T Transportation, Inc. | 3RU | 19 |
| Banuelos, Manuel | 3RU | 20 |
| Belcik Corp. | 3RT | 21 |
| Beltran, Andres | 3RT | 22 |
| Biegun, Jozef | 3RT | 23 |
| Bustamante, Jose | 3RU | 24 |
| Carrera, Joaquin | 3RT | 25 |
| Castro, Arturo | 3RT | 26 |
| Charlie Transportation Corp. | 3RU | 27 |
| Chico Transport Co. | 3RT | 28 |
| Cinmar Trucking, Inc. | 3RT | 29 |
| Cruz, Miguel | 3RT | 30 |
| Dabrowiecki, Wieslaw | 3RT | 31 |
| Diaz, David | 3RT | 32 |
| Dobrosz, Jozef | 3RT | 33 |
| Dobry Trucking, Inc. | 3RT | 34 |
| Dove, Arnold | 3RT | 35 |
| Dreams Trucking, LLC | 3RT | 36 |
| Dunaj, Jan | 3RT | 37 |
| E&G Trucking, Inc. | 3RT | 38 |
| Edvis Trucking Corp. | 3RU | 39 |
| Eloisa, Bernardo | 3RT | 40 |
| Eloisa, Sylvia | 3RU | 41 |
| Espinoza, Elias | 3RT | 42 |
| Estrada, Elvis | 3RU | 43 |

5,

| | | |
|---|---|---|
| Estrada, Ismael | 3RT | 44 |
| Estrada, Jesus | 3RT | 45 |
| Estrada, Jose | 3RT | 46 |
| Estrada, Juan | 3RT | 47 |
| Estrada, Salvador | 3RT | 48 |
| Evangelista, Federico | 3RT | 49 |
| Filipovic, Dejan | 3RT | 50 |
| Fox Trucking, Inc. | 3RT | 51 |
| Franco, Martin | 3RT | 52 |
| Fryz, Marek | 3RT | 53 |
| Gaba Trucking, Inc. | 3RU | 54 |
| Garcia, Adolfo | 3RT | 55 |
| Genyk Trucking, Inc. | 3RT | 56 |
| Glod, Ryszard | 3RU | 57 |
| Goldie Express, Inc. | 3RT | 58 |
| Gomez, Gerardo | 3RT | 59 |
| Gonzalez, Pascual | 3RT | 60 |
| Gorgol Trucking, Inc. | 3RT | 61 |
| Griffin Jr., Rodney | 3RT | 62 |
| Griffin, Rodney | 3RU | 63 |
| GTS Service Co. | 3RT | 64 |
| Guzman, Jose DeJesus | 3RT | 65 |
| Guzman, Juan A. | 3RT | 66 |
| Guzman, Luis | 3RT | 67 |
| Hernandez, Jose | 3RT | 68 |
| Herrera, Roberto | 3RU | 69 |
| Holyk, Ivan | 3RU | 70 |
| I A V Trucking, Inc. | 3RT | 71 |
| I&S Trucking Co. | 3RT | 72 |
| Ilavsky, Jan | 3RT | 73 |
| Iwaniec, Marcin | 3RT | 74 |
| J Mendoza Trucking, Inc. | 3RT | 75 |
| J. Trucking Transportation Corp. | 3RT | 76 |
| J.E.G. Trucking | 3RT | 77 |
| Janicki Corp. | 3RT | 78 |
| J-Four Trucking Corp. | 3RT | 79 |
| JRV Trucking | 3RT | 80 |
| JSM Trucking, Inc. | 3RT | 81 |
| Juszczyk, Piotr | 3RT | 82 |
| Kasik Trucking, Inc. | 3RU | 83 |
| Kasulaitis, Justin | 3RT | 84 |
| KES Transport, Inc. | 3RT | 85 |
| Kiki's Trucking, Inc. | 3RT | 86 |
| Kings of the Road Trucking, Inc. | 3RT | 87 |
| Kucera, Josef | 3RT | 88 |
| Kuna, Boguslaw | 3RT | 89 |
| Kuziel, Bartlomiej | 3RU | 90 |
| Kwarciak, Janusz | 3RT | 91 |
| L&R Trucking | 3RT | 92 |
| Lange, Grzegorz | 3RT | 93 |
| Lara, Guadalupe | 3RT | 94 |
| Leal Trucking, Inc. | 3RT | 95 |

| | | |
|---|---|---|
| Leanos, Jesus | 3RT | 96 |
| Lekarczyk, Zdzislaw | 3RT | 97 |
| Lemus, Juan | 3RT | 98 |
| Lipiec Trucking, Inc. | 3RU | 99 |
| Litpol Trucking, LLC | 3RT | 100 |
| Lonely Frog, Inc. | 3RU | 101 |
| M.A.M. Transportation, Inc. | 3RT | 102 |
| Madel, Dariusz | 3RT | 103 |
| MAG Transportation Services, Inc. | 3RT | 104 |
| Mancera, Jose | 3RT | 105 |
| Marquez, Jose | 3RT | 106 |
| Martinez, Alberto | 3RT | 107 |
| Martinez, Fernando | 3RT | 108 |
| Martyka, Thaddeus | 3RT | 109 |
| Mendoza, Joaquin | 3RT | 110 |
| Merchan, Jaime | 3RT | 111 |
| Mieczu Trucking, Inc. | 3RU | 112 |
| Millenium Square, Inc. | 3RT | 113 |
| Montes, Angel | 3RT | 114 |
| Montesa, Adolfo | 3RT | 115 |
| Morris Trucking, Inc. | 3RT | 116 |
| Mrowiec Janusz | 3RU | 117 |
| Mrzyglod, Artur | 3RU | 118 |
| Munoz, Mario | 3RT | 119 |
| Murillo, Robert | 3RT | 120 |
| Niemiec, Jozef | 3RU | 121 |
| O&K Express, Inc. | 3RT | 122 |
| Oceguera, Abel | 3RT | 123 |
| Oceguera, Leonel | 3RT | 124 |
| Oceguera, Salvador | 3RT | 125 |
| Ochoa Trucking | 3RT | 126 |
| Orendain, Francisco | 3RT | 127 |
| Orozco, Jesus | 3RT | 128 |
| Orozco, Roberto | 3RT | 129 |
| Oscar Trucking, Ltd. | 3RT | 130 |
| Paredes Trucking, Inc. | 3RT | 131 |
| Paredes, Raul | 3RT | 132 |
| Patkosh Transportation Service | 3RT | 133 |
| Pelino, Inc. | 3RT | 134 |
| Perez, Calixto | 3RT | 135 |
| Quiroz, Ramon | 3RU | 136 |
| R.G.O. Trucking, Inc. | 3RT | 137 |
| Rail to Rail, Inc. | 3RT | 138 |
| Rangel, Manuel | 3RT | 139 |
| Raznowiecki, Serge | 3RU | 140 |
| Regalado, Noe | 3RT | 141 |
| Reyes, Luis | 3RT | 142 |
| Reyes, Roberto | 3RU | 143 |
| Rodriguez, Ruben | 3RT | 144 |
| Rodriguez, Salvador | 3RT | 145 |
| Rodriquez, Leonel | 3RT | 146 |
| Romo, Yoan | 3RT | 147 |

| | | |
|---|---|---|
| Rufino, Salvador | 3RT | 148 |
| Saavedra, Ignacio | 3RT | 149 |
| Salamat, Basilio | 3RT | 150 |
| Salas, Benito | 3RT | 151 |
| Salazar, Mario | 3RT | 152 |
| Samano, Gilberto | 3RT | 153 |
| Sandoval, Nicanor | 3RT | 154 |
| Santoyo, David | 3RT | 155 |
| Serna, Jose | 3RT | 156 |
| Serna, Manuel | 3RT | 157 |
| Serna, Rodolfo | 3RT | 158 |
| Skorski, Pawel | 3RT | 159 |
| Soreghen, Scott | 3RU | 160 |
| Stachura, Wieslaw | 3RT | 161 |
| Stanibula, Mariusz | 3RT | 162 |
| Syco Trucking, Inc. | 3RT | 163 |
| T & MS Trucking, Inc. | 3RT | 164 |
| T&Z Trucking, Inc. | 3RU | 165 |
| T.J. Trucking, Inc. | 3RU | 166 |
| Tala Trucking, Inc. | 3RT | 167 |
| Tarpol, Inc. | 3RT | 168 |
| The Hauling Donkey | 3RT | 169 |
| Vazquez, Arturo | 3RU | 170 |
| Velez, Alejandro | 3RT | 171 |
| Verdin, Daniel | 3RT | 172 |
| Vilchez, Enrique | 3RT | 173 |
| Vingras, Vaidas | 3RT | 174 |
| Y.B. Logistics Corp | 3RT | 175 |
| Z Trucking Express, Inc. | 3RU | 176 |
| Zamora, Antonio | 3RT | 177 |
| Zaragoza, Miguel | 3RT | 178 |
| Zarychta Trucking Corp. | 3RT | 179 |
| Zavala, Maximiliano | 3RT | 180 |
| Zima, Richard | 3RT | 181 |
| Ziomal, Inc. | 3RT | 182 |
| ZOR Trucking, Inc. | 3RT | 183 |
| Zurik, Ratislav | 3RT | 184 |